## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**BRITNEY C. CASH,**

   **Plaintiff,**                                        **CASE NO.**

**v.**

**PROFESSIONAL DEBT MEDIATION, INC.,**
**CREEKSIDE AT DUVAL, LLC,**
**EXPERIAN INFORMATION SOLUTIONS, INC.,**
**TRANS UNION, LLC, EQUIFAX INFORMATION**
**SERVICES, LLC.**

   **Defendants.**
_____/

## COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiff Britney C. Cash ("Plaintiff"), through her attorneys, alleges the following against Defendants Professional Debt Mediation, Inc. ("PDM"), Creekside at Duval ("Creekside"), LLC, Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); and Trans Union, LLC ("TransUnion"):

## INTRODUCTION

This is a multi-count complaint based on continued collection and credit reporting after Ms. Cash's debt to her former apartment complex was discharged in bankruptcy.

1

## JURISDICTION AND VENUE

1. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

2. Venue in this District is proper pursuant to 28 U.S.C. 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

3. Defendants transact business here, PDM is headquartered here, and the bankruptcy was filed in this district, as such, personal jurisdiction is established.

## PARTIES

4. Plaintiff Britney C. Cash is a natural person residing in Walnut Cove, North Carolina.

5. Plaintiff is a ("consumer") as defined by the FCRA, 15 U.S.C. §1681a(c.

6. Defendant, Creekside, is an apartment complex in Jacksonville, Florida, and is managed by Maryland Management Company.

7. According to the Florida Division of Corporations, Defendant Creekside's principal address and mailing address is ℅ Maryland Management Company, 2613 Cabover Drive, Hanover, MD 21076. Defendant Creekside's manager is James Clauson and Maryland Management Company's president is James Clauson.

8. Defendant, PDM, is a debt collector based in Jacksonville, Florida,

known nationally for collecting on apartment and rental debts. It is subject to the jurisdiction of this Court.

9.  Defendant, PDM, is a company who furnishes information to consumer reporting agencies as provided in the FCRA, 15 U.S.C. § 1681s-2.

10. Defendant Experian is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the  purpose of furnishing *consumer report*s, as defined in 15 USC 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

11. Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f).  On information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the  purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309.

12. Defendant TransUnion is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)). On information and belief, TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information

concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 USC 1681a(d), to third parties. TransUnion's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661.

13. On information and belief, Equifax, Experian, and TransUnion disburse *consumer reports* to third parties under contract for monetary compensation.

14. At all relevant times, Defendants acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## **FACTUAL ALLEGATIONS**

15. On or about May 14, 2018, Plaintiff entered into a lease at Creekside Park apartments in Jacksonville, Florida.

16. After Plaintiff moved out on or about January 7, 2019, Creekside Park apartments claimed that she owed a debt of $2,926.66 ("Debt").

17. At all times relevant, Creekside Park apartment was managed by Maryland Management Company at 2613 Cabover Drive, Hanover, Maryland 21076.

18. On or about October 2, 2020, Plaintiff filed for a voluntary bankruptcy under Chapter 7 of Title 11, the Bankruptcy Code, in the Middle District of

Florida, Jacksonville Division (Case Number:  3:20-bk-02926-JAF).

19. Plaintiff fully complied with the Bankruptcy; Plaintiff received her order of discharge on or about January 12, 2021.

20. The Debt was listed on Schedule F of Plaintiff's bankruptcy petition as an unsecured nonpriority claim and accordingly the federal bankruptcy clerk electronically notified Creekside through its agent, Maryland Management Company, at *dougp@marylandmgmt.com* via the Bankruptcy Noticing Center of the bankruptcy filing and 341 meeting on October 2, 2020 and of the bankruptcy discharge on January 12, 2021.

21. Despite notice of the bankruptcy discharge, on or about February 11, 2021, Creekside assigned the Debt to PDM for collection.

22. After the bankruptcy discharge, Plaintiff was contacted by PDM regarding the Debt and on three separate occasions she explained that this debt was discharged in her bankruptcy and no longer owed. On one occasion, a PDM employee apologized and promised to update their system.

23. On March 23, 2023, PDM sent Plaintiff a collection letter and validated the debt with Creekside.

24. Plaintiff was eager to begin working on improving her credit following her bankruptcy and obtaining her "fresh start".

25. On or about April 17, 2023, Plaintiff obtained her Experian consumer credit

reports to make sure the bankruptcy reporting was accurate.

26. On or about April 17, 2023, Plaintiff obtained her Equifax consumer credit report to make sure the bankruptcy reporting was accurate.

27. On or about April 17, 2023, Plaintiff obtained her TransUnion consumer credit report to make sure the bankruptcy reporting was accurate.

28. All three credit bureau Defendants (Experian, Equifax and TransUnion) were reporting Plaintiff's bankruptcy as a Chapter 7 that was discharged on January 12, 2021.

29. To her dismay, Plaintiff discovered that Experian, TransUnion, and Equifax were still reporting the Debt from Creekside Park apartment (account ending in 4400) with an amount owed of $2,927.

30. Experian should have reported the account as discharged in bankruptcy or similar language with zero balance.

31. Equifax should have reported the account as discharged in bankruptcy or similar language with zero balance.

32. TransUnion should have reported the account as discharged in bankruptcy or similar language with zero balance.

33. Defendants do not maintain reasonable procedures to ensure debts that are derogatory prior to a consumer's bankruptcy filing do not continue to report balances owing or past due amounts when those debts are almost

certainly discharged in bankruptcy.

34. As a result of Defendants' conduct, Plaintiff has sustained actual damages including but not limited to, embarrassment, anguish, and emotional and mental pain.

35. Defendants' reporting is particularly aggravating of Plaintiff's damages because Plaintiff diligently followed her bankruptcy requirements, looking forward to the day when all her debts would be paid and she could have a fresh start, only to discover  that all three (3) Defendants failed to perform their legal obligation to report the  accounts accurately.

36. This caused Plaintiff stress and anxiety about her credit reputation and a belief that she may still owe debts.

### Dispute Letters

37. On July 13, 2023, Plaintiff sent dispute letters to the credit bureaus, Experian, TransUnion, and Equifax, disputing the Debt due to the bankruptcy discharge and requesting that it be updated. *See Composite Exhibit A.*

38. On or about August 26, 2023, after receiving her dispute results, Plaintiff discovered that Experian was still reporting the Debt from Creekside Park apartment,  account ending in 4400 and an amount owed of $2,927.

39. On or about August 26, 2023, after receiving her dispute results, Plaintiff

discovered that TransUnion was still reporting the Debt from Creekside Park apartment,  account ending in 4400 and an amount owed of $2,927.

40. On or about August 26, 2023, after receiving her dispute results, Plaintiff discovered that Equifax was still reporting the Debt from Creekside Park apartment,  account ending in 4400 and an amount owed of $2,927.

41. After receiving these dispute letters, upon information and belief, the credit bureau Defendants properly contacted the furnisher, Defendant PDM, but failed to properly update the balance as discharged in bankruptcy.

42. After receiving Plaintiff's dispute letters, upon information and belief, Defendants Experian, Equifax, and TransUnion failed to conduct a reasonable investigation of the accounts.

43. Experian should have reported the account as discharged in bankruptcy or similar language with zero balance but was still reporting the Debt.

44. Equifax should have reported the account as discharged in bankruptcy or similar language with zero balance but was still reporting the Debt.

45. TransUnion should have reported the account as discharged in bankruptcy or similar language with zero balance but was still reporting the Debt.

46. Further, after receiving Plaintiff's dispute letters, Defendants had enough information available to them, based on the underlying previous disputes

and documentation, to confirm that the balance was *not* verifiable. This inability to verify the balance, and yet still confirm it in "maximum accuracy" is a violation of the Fair Credit Reporting Act and the Plaintiff's rights regarding her consumer report.

47. On September 15, 2023, Plaintiff again sent dispute letters to the credit bureaus, Experian, TransUnion, and Equifax, disputing the Debt due to the bankruptcy discharge and requesting that it be updated. ***See Composite Exhibit B.***

48. After receiving the September dispute letters, Plaintiff's Debt was eventually reported as discharged in bankruptcy.

**RESULTS OF DEFENDANTS' FAILURES**

49. When Plaintiff disputed the accounts, Defendants Experian, Equifax, and TransUnion were each required to perform a reinvestigation; however, the Defendants did not properly reinvestigate the dispute on their own or through their collective communications and continued to report the erroneous credit information with actual knowledge of errors, in violation of the FCRA.

50. When Plaintiff disputed the account, Defendant PDM was required to perform a reinvestigation; however, Defendant PDM continued to report the erroneous credit information with actual knowledge of errors, in

violation of the FCRA, for years in complete disregard to the disputes and information provided by Plaintiff.

51. As a result of Defendants' credit reporting of the fraudulent accounts on Plaintiff's credit reports, Plaintiff's credit score was reduced.

52. Plaintiff retained undersigned counsel for the purpose of pursuing this matter against Defendants and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

53. The inaccurate reporting by Defendants has caused Plaintiff's credit file to be severely damaged by painting Plaintiff as an irresponsible individual, when in fact Plaintiff has been responsible for her debts.

54. Plaintiff has been denied credit several times and obtained credit at less favorable  rates due to the reporting by Defendants.

55. All necessary conditions precedent to the filing of this action occurred or Defendants have waived.

**COUNT I**
**CLAIMS AGAINST DEFENDANT TRANSUNION**
**FOR VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681 _et seq._**
**_(REINVESTIGATION)_**

56. Plaintiff incorporates Paragraph 1 – 55 above as fully stated herein.

57. Defendant TransUnion willfully and/or negligently failed to put in place procedures to properly reinvestigate consumer claims of inaccuracy in credit reports.

58. Defendant TransUnion willfully and/or negligently ignored the information provided to it by Plaintiff and by the results of the other fraudulent account investigations.

59. Defendant TransUnion willfully and/or negligently refused to properly reinvestigate Plaintiff's consumer report and the errors stated.

60. Defendant TransUnion willfully and/or negligently violated 15 U.S.C. § 1681i(a)1.

61. Defendant TransUnion willfully and/or negligently violated 15 U.S.C. § 1681i (a)(4).

62. Defendant TransUnion negligently and/or willfully failed to properly consider and give due weight to all relevant information submitted by Plaintiff in the course of the reinvestigation, in violation of the FCRA, 15 U.S.C. § 1681 (a)(4).

63. Defendant TransUnion willfully and/or negligently violated 15 U.S.C. § 1681i (a)(5).

64. In response to the request for reinvestigation, Defendant TransUnion improperly verified the trade lines as correct, and refused to remove the

inaccurate information, in violation of the requirements of the FCRA, 15 U.S.C. § 1681i (a)(5).

65. Defendant TransUnion has negligently and/or willfully failed to conduct a proper reinvestigation of the trade lines in violation of the FCRA, 15 U.S.C. §§ 1681i.

66. As noted above, TransUnion failed to conduct a proper investigation by wholly ignoring the plain language of Plaintiff's disputes and the attached documentation.

67. Defendant TransUnion's actions in violating the FCRA constituted negligent and/or willful noncompliance with the FCRA and entitles Plaintiff to actual damages, statutory damages, and attorney's fees and costs as enumerated in 15 U.S.C. §§ 1681n and/or 1681o.

68. Defendant TransUnion's conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages and harm to Plaintiff as stated herein, and as a result, Defendant is liable to compensate Plaintiff for the full amount of statutory and actual damages, along with attorney's fees and costs, as well as such other relief as permitted by law.

**WHEREFORE**, Plaintiff prays that the Court grant the following relief in favor of Plaintiff and against Defendant TRANSUNION:

a)      For actual damages;

b)      For compensatory damages;

c)      For statutory damages;

d)      For attorney's fees and costs incurred in this action;

e)      For an Order directing that Defendant immediately delete all of the inaccurate information from Plaintiff's credit reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information; and;

f)      For such other and further relief as the Court may deem just and proper.

## COUNT II
## CLAIMS AGAINST DEFENDANT EXPERIAN
## FOR VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681 *et seq.*
## *(REINVESTIGATION)*

69. Plaintiff incorporates Paragraph 1 – 55 above as fully stated herein.

70. Defendant Experian willfully and/or negligently failed to put in place procedures to properly reinvestigate consumer claims of inaccuracy in credit reports.

71. Defendant Experian willfully and/or negligently ignored the information provided to it by Plaintiff and by the results of the other fraudulent account investigations.

72. Defendant Experian willfully and/or negligently refused to properly reinvestigate Plaintiff's consumer report and the errors stated.

73. Defendant Experian willfully and/or negligently violated 15 U.S.C. § 1681i(a)1.

74. Defendant Experian willfully and/or negligently violated 15 U.S.C. § 1681i (a)(4).

75. Defendant Experian negligently and/or willfully failed to properly consider and give due weight to all relevant information submitted by Plaintiff in the course of the reinvestigation, in violation of the FCRA, 15 U.S.C. § 1681 (a)(4).

76. Defendant Experian willfully and/or negligently violated 15 U.S.C. § 1681i (a)(5).

77. In response to the request for reinvestigation, Defendant Experian improperly verified the trade lines as correct, and refused to remove the inaccurate information, in violation of the requirements of the FCRA, 15 U.S.C. § 1681i (a)(5).

78. Defendant Experian has negligently and/or willfully failed to conduct a proper reinvestigation of the trade lines in violation of the FCRA, 15 U.S.C. §§ 1681i.

79. As noted above, Experian failed to conduct a proper investigation by wholly ignoring the plain language of Plaintiff's disputes and the attached documentation.

80. Defendant Experian's actions in violating the FCRA constituted negligent and/or willful noncompliance with the FCRA and entitles Plaintiff to actual damages, statutory damages, and attorney's fees and costs as enumerated in 15 U.S.C. §§ 1681n and/or 1681o.

81. Defendant Experian's conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages and harm to Plaintiff as stated herein, and as a result, Defendant is liable to compensate Plaintiff for the full amount of statutory and actual damages, along with attorney's fees and costs, as well as such other relief as permitted by law.

**WHEREFORE**, Plaintiff prays that the Court grant the following relief in favor of Plaintiff and against Defendant Experian:

a)    For actual damages;

b)    For compensatory damages;

c)    For statutory damages;

d)    For attorney's fees and costs incurred in this action;

e)    For an Order directing that Defendant immediately delete all of the inaccurate information from Plaintiff's credit reports and files and cease reporting

the inaccurate information to any and all persons and entities to whom they report

consumer credit information; and;

      f)     For such other and further relief as the Court may deem just and

proper.

**COUNT III**
**CLAIMS AGAINST DEFENDANT EQUIFAX**
**FOR VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681 *et seq.***
***(REINVESTIGATION)***

82. Plaintiff incorporates Paragraph 1 – 55 above as fully stated herein.

83. Defendant Equifax willfully and/or negligently failed to put in place
    procedures to properly reinvestigate consumer claims of inaccuracy in
    credit reports.

84. Defendant Equifax willfully and/or negligently ignored the information
    provided to it by Plaintiff and by the results of the other fraudulent
    account investigations.

85. Defendant Equifax willfully and/or negligently refused to properly
    reinvestigate Plaintiff's consumer report and the errors stated.

86. Defendant Equifax willfully and/or negligently violated 15 U.S.C. §
    1681i(a)1.

87. Defendant Equifax willfully and/or negligently violated 15 U.S.C. § 1681i
    (a)(4).

88. Defendant Equifax negligently and/or willfully failed to properly consider and give due weight to all relevant information submitted by Plaintiff in the course of the reinvestigation, in violation of the FCRA, 15 U.S.C. § 1681 (a)(4).

89. Defendant Equifax willfully and/or negligently violated 15 U.S.C. § 1681i (a)(5).

90. In response to the request for reinvestigation, Defendant Equifax improperly verified the trade lines as correct, and refused to remove the inaccurate information, in violation of the requirements of the FCRA, 15 U.S.C. § 1681i (a)(5).

91. Defendant Equifax has negligently and/or willfully failed to conduct a proper reinvestigation of the trade lines in violation of the FCRA, 15 U.S.C. §§ 1681i.

92. As noted above, Equifax failed to conduct a proper investigation by wholly ignoring the plain language of Plaintiff's disputes and the attached documentation.

93. Defendant Equifax's actions in violating the FCRA constituted negligent and/or willful noncompliance with the FCRA and entitles Plaintiff to actual damages, statutory damages, and attorney's fees and costs as enumerated in 15 U.S.C. §§ 1681n and/or 1681o.

94. Defendant Equifax's conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages and harm to Plaintiff as stated herein, and as a result, Defendant is liable to compensate Plaintiff for the full amount of statutory and actual damages, along with attorney's fees and costs, as well as such other relief as permitted by law.

**WHEREFORE**, Plaintiff prays that the Court grant the following relief in favor of Plaintiff and against Defendant Equifax:

a)      For actual damages;

b)      For compensatory damages;

c)      For statutory damages;

d)      For attorney's fees and costs incurred in this action;

e)      For an Order directing that Defendant immediately delete all of the inaccurate information from Plaintiff's credit reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information; and;

f)      For such other and further relief as the Court may deem just and proper.

**COUNT IV**
**CLAIMS AGAINST DEFENDANT PDM**
**FOR VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681 _et seq._**

95. Plaintiff incorporates Paragraph 1 – 55  above as fully stated herein.

18

96. Defendant PDM has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comport with FCRA, 15 U.S.C. § 1681s-2(b).

97. Specifically, PDM violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation of disputed information, by failing to review all relevant information provided by the consumer reporting agency, by failing to review Plaintiff's prior dispute letter, the documents sent to it, and its own entire file as part of such investigation, by failing to accurately communicate the results of its investigation to the consumer reporting agencies, by verifying inaccurate or incomplete information to a consumer reporting agency as part of a reinvestigation of such information disputed by Plaintiff and/or by verifying and continuing to report inaccurate information after notice and confirmation of those errors.

98. Further, PDM violated 15 U.S.C. § 1681s-2(b) by failing to promptly modify, delete or permanently block information disputed by Plaintiff which it knew or reasonably should have known was inaccurate, obsolete and/or incomplete.

99. Following the reinvestigation and dispatch of direct notice to PDM, who failed to notify the consumer reporting agencies to whom it reported credit information that the debts were disputed, in violation of the FCRA, 15

U.S.C. §§ 1681s-2(b) the general duties implied to all conduct of furnishers under 15 U.S.C. § 1681s-2(a)(3).

100.    PDM's reinvestigation was not conducted in good faith.

101.    PDM's reinvestigation was not conducted reasonably.

102.    PDM's reinvestigation was not conducted using all information reasonably available to the Defendant.

103.    PDM's reinvestigation was *per se* deficient by reason of these failures in its reinvestigation of the trade line on Plaintiff's consumer report in light of information it already had and multiple disputes with the credit bureaus.

104.    PDM's actions in violating the FCRA, 15 U.S.C. § 1681s-2(b) constituted willful and/or negligent noncompliance with the FCRA, and entitles Plaintiff to actual damages enumerated in 15 U.S.C. § 1681o and/or 15 U.S.C. § 1681n.

105.    Defendant has violated and **continues to violate** 15 U.S.C. § 1681s-2(a)(1)(A) ("A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate").

106.     Defendant PDM had actual knowledge of the inaccurate account information by the documents provided to it by the original creditor and by Plaintiff.

107.     Defendant PDM had **received multiple disputes from the bureaus** to find that this account was inaccurate, along with the documents it already had from the original creditor as well as documents provided by Plaintiff.

108.     Despite having all the information available to it as the other credit bureaus, Defendant **still continued to report inaccurate and harmful information** in violation of 15 U.S.C. § 1681s-2(a)(1)(A). And PDM is **still reporting this information.**

109.     As a result of PDM's conduct, actions, and inactions, Plaintiff has suffered emotional distress, humiliation, mental anguish and damages to her creditworthiness.

110.     PDM's actions and inactions are willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n. In the alternative, these actions were grossly negligent entitling Plaintiff to recover actual damages under 15 USC § 1681o.

111.     Plaintiff is entitled to recover costs and attorney fees from Defendant

PDM in an amount to be determined by the Court pursuant to 15 U.S.C.

§1681n and/or §1681o.

112.     PDM's actions demonstrate an honest disregard for consumers and

consumer law. Plaintiff will move for punitive damages following

discovery of relevant information.

**WHEREFORE**, Plaintiff prays that the Court grant the following

relief in favor of Plaintiff and against PDM:

a)     For actual damages;

b)     For compensatory damages;

c)     For statutory damages;

d)     For punitive damages;

e)     For attorney's fees and costs incurred in this action;

f)     For an Order directing that Defendant immediately delete all of

the inaccurate information from Plaintiff's credit reports and files and cease

reporting the inaccurate information to any and all persons and entities to

whom they report consumer credit information; and

g)     For such other and further relief as the Court may deem just

and proper.

**COUNT V-PDM**
**CLAIMS AGAINST DEFENDANT PDM FOR**
**VIOLATIONS OF THE FDCPA**
**(FDCPA disclosure to third parties)**

113.     Plaintiff incorporates Paragraph 1 – 55 above as fully stated herein.

114.     Plaintiff is a "consumer" as that term is defined by 15 U.S.C. §1692(a)(3).

115.     Defendant is a "debt collector" as defined by the 15 U.S.C.A. § 1692a(6).

116.     At all material times herein, Defendant attempted to collect a consumer debt incurred by Plaintiff.

117.     At all material times herein, the Debt is a consumer debt obligation resulting from a transaction for goods or services and incurred primarily for personal, household, or family use.

118.     At all material times herein, Defendant's conduct, with respect to the debt complained of, qualifies as "communication" as defined 15 U.S.C. §1692a(2).

119.     This is an action seeking relief for violation of the FDCPA to recover statutory damages under 15 U.S.C.A. § 1692k(a)(2)(B) and attorney's fees and costs of this action under 15 U.S.C.A. § 1692k(a)(3).

120.     The disclosures to third parties by way of credit reporting are "communications" as that term is defined by 15 U.S.C. § 1692a(2).

121.     Plaintiff's debt was no longer owed due to her discharge in bankruptcy.

122.      By misrepresenting the status of her Debt to third parties, Defendant PDM violated:

   a.     15 U.S.C. §1692e, generally ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt);

   b.      15 U.S.C §1692e(2)(A) ("The false representation of . . . the character, amount, or legal status of any debt"); and

   c.     15 U.S.C.  §1692d, generally ("A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt").

123.     As a direct and proximate result of Defendant's FDCPA violations, Plaintiff has been harmed.   Plaintiff is entitled to statutory damages, attorney's fees and the costs of this action pursuant to 15 U.S.C. § 1692k(a)(3).

WHEREFORE, Plaintiff prays that the Court grant the following relief in favor of Plaintiff and against Defendant PDM:

   a)     For actual damages;

b)     For compensatory damages;

c)     For statutory damages;

d)     For punitive damages;

e)     For attorney's fees and costs incurred in this action;

f)     For such other and further relief as the Court may deem just and proper.

## COUNT VI
## CLAIMS AGAINST DEFENDANT
## PDM FOR VIOLATIONS OF THE FCCPA

124.     Plaintiff incorporates Paragraph 1 – 55 above as fully stated herein.

125.     This is an action seeking relief for violation of the Florida Consumer Collections Practices Act (FCCPA) to recover statutory and actual damages and reasonable attorney's fees under Fla. Stat. 559.77

126.     Plaintiff is a "consumer" and Defendant PDM is a "creditor" as those terms are defined in Fla. Stat. 559.55 et seq.

127.     At all material times herein, Defendant is a "person" subject to Florida Statutes, Section 559.72.  *See Florida Statutes*, Sections 559.55(5), (7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

128.     The Creekside Debt is a consumer debt pursuant to Fla. Stat. 559.55.

129.    At all material times herein, Defendant's conduct, with respect to the debt complained of, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2) and 15 U.S.C. §1692a(2).

130.    Despite this actual knowledge of that Plaintiff no longer owed the Debt, PDM still sent out letters demanding payment for the fraudulent balance.

131.    By continuing to collect on a debt that was fraudulent with actual knowledge, Defendant was subject to, and has violated provisions of Fla. Stat. §559.72 by: "Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.." Fla. Stat. §559.72(9); and "willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." Fla. Stat. §559.72(7).

132.    Defendant's illegal and abusive collection communications as more fully described above were the direct and proximate cause of emotional distress on the part of Plaintiff and caused her unnecessary personal strain in her relationships, as well as with other family members.

133.    Plaintiff has suffered actual damages as a result of these illegal collection communications by the Defendant in the form of anger, anxiety,

emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

134.     As a result of Defendant's violations of the FCCPA, Plaintiff is entitled to actual damages and statutory damages in an amount up to $1,000.00 and reasonable attorney's fees and costs pursuant to Section 559.77 from Defendant.

135.     Additionally, Section 559.77 provides a court may award punitive damages as well as equitable relief to Plaintiff such as enjoining further illegal collection activity.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

a.  for an award of actual damages pursuant to Section 559.77 against Defendant and for Plaintiff;

b.  for an award of statutory damages of $1,000.00 pursuant to Section 559.77 against Defendant and for Plaintiff;

c.  for an award of costs of litigation and reasonable attorney's fees pursuant to Section 559.77 against Defendant and for Plaintiff; and

d.  for such other relief as this Court deems just and proper.

## COUNT VII
## VIOLATIONS OF THE FDCPA
## BY DEFENDANT PDM

136.     Plaintiff incorporates Paragraph 1 – 55 above as fully stated herein.

137. This is an action seeking relief for violation of the FDCPA to recover statutory and actual damages under 15 U.S.C.A. § 1692k(a)(2)(B) and attorney's fees and the costs of this action under 15 U.S.C.A. § 1692k(a)(3).

138. The collection communications by Defendant are "communications" as that term is defined by 15 U.S.C. § 1692a(2).  At all material times herein, Plaintiff's debt was a consumer debt as defined by the FDCPA, 15 U.S.C.A. § 1692a(5).

139. At all material times herein, Plaintiff was a "consumer" as defined by the FDCPA, 15 U.S.C.A. § 1692a(3).

140. At all material times herein, Defendant was a "debt collector" as defined by 15 U.S.C.A. § 1692a(6).

141. By continuing to attempt to collect a debt that Defendant had actual knowledge was no longer owed, Defendant violated: 15 U.S.C. §1692e, specifically sections §1692e (2) The false representation of - (A) the character, amount, or legal status of any debt;

142. As a direct and proximate result of Defendant's FDCPA violations, Plaintiff has been harmed.  Plaintiff is entitled to statutory damages, actual damages including emotional damages and any money paid to Defendant on the improper debt under 15 U.S.C. § 1692k(a)(2)(B) and attorney's fees and the costs of this action pursuant to 15 U.S.C. § 1692k(a)(3).

**WHEREFORE**, Plaintiff prays that the Court grant the following relief in favor of Plaintiff and against Defendant PDM:

    a)    For actual damages;

    b)    For compensatory damages;

    c)    For statutory damages;

    d)    For punitive damages;

    e)    For attorney's fees and costs incurred in this action;

    f)    For such other and further relief as the Court may deem just and proper.

## COUNT VIII
## CLAIMS AGAINST DEFENDANT
## CREEKSIDE FOR VIOLATIONS OF THE FCCPA

143.    Plaintiff incorporates Paragraph 1 – 55 above as fully stated herein.

144.    This is an action seeking relief for violation of the Florida Consumer Collections Practices Act (FCCPA) to recover statutory and actual damages and reasonable attorney's fees under Fla. Stat. 559.77

145.    Plaintiff is a "consumer" and Defendant Creekside is a "creditor" as those terms are defined in Fla. Stat. 559.55 et seq.

146.    At all material times herein, Defendant is a "person" subject to Florida Statutes, Section 559.72.  *See Florida Statutes*, Sections 559.55(5), (7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

147.    At all material times herein, Defendant's conduct, with respect to the debt complained of, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2) and 15 U.S.C. §1692a(2).

148.    On January 12, 2021, Defendant was notified that the Creekside Debt was discharged in bankruptcy but nevertheless still sent the account to PDM for collections and even validated the Debt to PDM in March 2023.

149.    Despite this actual knowledge, PDM still did not withdraw the debt from collections.

150.    By continuing to collect on a debt that was fraudulent with actual knowledge, Defendant was subject to, and has violated provisions of Fla. Stat. §559.72 by: "Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.." Fla. Stat. §559.72(9); and "willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." Fla. Stat. §559.72(7).

151.    Defendant had actual knowledge that the balance on the account was discharged, and despite this, continued to collect it anyway.

152.    Defendant's illegal and abusive collection communications as more fully described above were the direct and proximate cause of emotional

distress on the part of Plaintiff and caused her unnecessary personal strain in her relationships, as well as with other family members.

153.    Plaintiff has suffered actual damages as a result of these illegal collection communications by the Defendant in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

154.    As a result of Defendant's violations of the FCCPA, Plaintiff is entitled to actual damages and statutory damages in an amount up to $1,000.00 and reasonable attorney's fees and costs pursuant to Section 559.77 from Defendant.

155.    Additionally, Section 559.77 provides a court may award punitive damages as well as equitable relief to Plaintiff such as enjoining further illegal collection activity.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

    a.  for an award of actual damages pursuant to Section 559.77 against Defendant and for Plaintiff;

    b.  for an award of statutory damages of $1,000.00 pursuant to Section 559.77 against Defendant and for Plaintiff;

    c.  for an award of costs of litigation and reasonable attorney's fees pursuant to Section 559.77 against Defendant and for Plaintiff; and

**d.** for such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands

a trial by jury of all issues triable by jury.

Respectfully submitted this 13th day of March 2024.

**STORY | GRIFFIN**

/s/ Max Story_____
MAX STORY, ESQ.
Florida Bar No.:  527238
AUSTIN J. GRIFFIN, ESQ.
Florida Bar No.: 117740
328 2nd Avenue North, Suite 100
Jacksonville Beach, FL  32250
Telephone: (904) 372-4109
max@storylawgroup.com
austin@storylawgroup.com
Attorneys for Plaintiff